[Cite as *State v. Solorio*, 2022-Ohio-3749.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210526 |
| | | TRIAL NO. B-2001537 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| JOSE CALDERON SOLORIO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 21, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Clyde Bennett II,* for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} A jury found defendant-appellant Jose Calderon Solorio guilty of multiple counts of gross sexual imposition against his minor daughter, L.C., after she accused him of sexually abusing her over a three-year period. On appeal, Mr. Calderon raises five assignments of error challenging an array of issues, including *Brady* violations, admissibility of evidence, imprecision in the indictment, weight and sufficiency of the evidence, and ineffective assistance of counsel. Based on the record at hand and the governing caselaw, however, we overrule his assignments of error and affirm the judgment of the trial court.

I.

{¶2} L.C. testified that Mr. Calderon began sexually abusing her in the summer of 2017, when she was just 11 years old. The first time an assault occurred, Mr. Calderon, L.C., and L.C.'s younger brothers were camping in a recreational vehicle at Caesar Creek State Park in Warren County, Ohio. At night, as L.C. laid in bed between Mr. Calderon and her youngest brother, Mr. Calderon inappropriately touched L.C. over her clothes. Several months later, in February or March of 2018, Mr. Calderon laid next to L.C. on the couch in the family home. This time, he made inappropriate contact with her beneath her clothing. L.C. also testified about three other incidents during which Mr. Calderon made inappropriate contact with her beneath her clothing. These incidents took place when L.C. was 13 years old. Besides the first incident, the remaining five occurred in Hamilton County.

{¶3} In May 2019, L.C. came forward and told her mother about the abuse. Earlier that day, while she was supposed to be at a school social event, 13-year-old L.C. walked to a friend's home without her parents' permission. When Mr. Calderon

discovered this, he became enraged—driving to her friend's home, grabbing L.C. by the hair, and shoving her into his truck. On the drive home, L.C. tried explaining that she went to her friend's home to charge her dying cell phone. Mr. Calderon responded by striking her in the face, and when they arrived home, he told her to wait inside while he went to the shed to grab a garden hose. He then proceeded to use the hose to beat L.C. on her upper legs.

{¶4}   This attack served as a breaking point for L.C. When her mother arrived home from work, L.C. opened up about Mr. Calderon's history of sexually abusing her over the past few years. Instead of alerting law enforcement officials or medical professionals, however, L.C.'s mother dispatched her inside the house while she discussed the allegations with Mr. Calderon. Her parents took no further action that night regarding the allegations.

{¶5}   The next day at school, L.C. disclosed the abuse to a close friend. Her friend notified a trusted teacher, who in turn reported the allegations to Dr. Stacy Orso, the principal of L.C.'s school. After speaking with L.C. and confirming the allegations, Dr. Orso summoned the police and called the child-abuse-reporting hotline 241-KIDS. A police officer took L.C. to the Mayerson Center for Safe and Healthy Children at the Cincinnati Children's Hospital, where forensic interviewer Ashley Cremeans interviewed her. Ms. Cremeans made a preliminary finding confirming inappropriate sexual contact between L.C. and Mr. Calderon.

{¶6}   After L.C.'s interview at the Mayerson Center, she testified about the abuse before a grand jury in August of 2019. She explained the incident at Caesar Creek Park as well as an incident at a home her father was remodeling. She also indicated that the abuse occurred other times, when L.C. and Mr. Calderon were alone

3

in the living room. Notwithstanding this testimony, the grand jury did not return an indictment.

{¶7} Subsequently, L.C. began attending therapy sessions with a Cincinnati Children's Hospital psychologist. Over the course of these sessions, L.C. disclosed more details about the abuse she suffered, so the psychologist referred her back to the Mayerson Center for a second interview. This interview, conducted by licensed social worker Emily Harman, focused on the instances of sexual abuse that L.C. did not share during her first Mayerson Center interview. Following the second interview, the state presented the matter to another grand jury, which issued a six-count indictment in July 2020.

{¶8} The case proceeded to trial, and Mr. Calderon testified in his own defense. He categorically denied engaging in any inappropriate contact or conduct with L.C. To the contrary, he maintained that L.C. fabricated the abuse allegations to deflect attention from her own unruly misconduct.

{¶9} Nevertheless, the jury found Mr. Calderon guilty of all six counts. At a sentencing hearing, the trial court sentenced him to 18 months in prison for the four counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and nine months for the two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). The sentences were made concurrent with each other. Mr. Calderon timely appeals, raising five assignments of error.

II.

{¶10} In his first assignment of error, Mr. Calderon claims that the state's failure to divulge certain information to the defense before trial violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Before trial, defense

4

counsel requested that the state provide the transcript of L.C.'s first grand jury testimony. The trial court declined—at that point—to unseal the grand jury testimony, reasoning that it would reconsider and render a final determination when L.C. testified at trial. During a recess in jury selection, the day before L.C. testified, the state notified the court that it had decided to relinquish the requested testimony. Defense counsel accordingly had the requested testimony in hand prior to L.C. taking the stand.

{¶11} "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. But *Brady* generally does not apply to delayed disclosure when the defense has the ability to use the evidence during trial, in the absence of prejudice: " '*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose.' " *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 88, quoting *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir.1994). " 'Delay only violates *Brady* when the delay itself causes prejudice.' " *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 155, quoting *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir.1992).

{¶12} Before the grand jury, L.C. testified that her father never touched her underneath her clothes, whereas at trial, L.C. testified as to multiple instances where her father made inappropriate sexual contact with her underneath her clothes. Assuming that this testimony was exculpatory, given that counsel possessed the transcript at issue in advance of L.C.'s testimony, Mr. Calderon fails to show how the delayed disclosure prejudiced him. In fact, defense counsel ably cross-examined L.C. on these inconsistencies at trial.

5

{¶13} As Mr. Calderon sees it, had the state turned over L.C.'s first grand jury testimony before trial, counsel would have been better prepared to impeach L.C. at trial. But this strikes us as speculative, given the actual impeachment that occurred at trial. Mr. Calderon sheds no light on what further impeachment efforts counsel would have pursued had she been armed with the transcripts sooner.

{¶14} And although we can certainly imagine scenarios in which defense counsel needs additional time to analyze late emerging exculpatory evidence—here, defense counsel never requested a continuance to review the testimony (or any other similar relief). On appeal, Mr. Calderon only insists that, had the state provided the grand jury transcript before trial, defense counsel could have procured extrinsic evidence to impeach L.C. regarding the conflicting testimony.

{¶15} Without a showing of what specific extrinsic evidence defense counsel may have been able to procure, "[t]his claim is vague and speculative, * * * and thus fails to reach the level of a reasonable probability, one that is 'sufficient to undermine confidence in the outcome.' " *Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, at ¶ 156, quoting *State v. Johnson*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. Mr. Calderon does not explain how earlier disclosure of L.C.'s first grand jury testimony would have enhanced the ability of the defense to impeach L.C. Without any showing of prejudice based on the extant record, we overrule the first assignment of error.

III.

{¶16} In his second assignment of error, Mr. Calderon claims that the time periods of the offenses alleged in his indictment were overbroad, preventing him from presenting an effective defense. He alleges that the trial court erred by instructing the jury that they only need to find that the offense(s) "took place on a date reasonably near the date claimed" in the indictment. But Mr. Calderon failed to object to this instruction at trial, limiting our review to plain error. *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 7 ("When a defendant fails to object to the jury instructions, [he] waives all but plain error.").

{¶17} Under the United States and Ohio Constitutions, "an individual accused of a felony is entitled to an indictment setting forth the 'nature and cause of the accusation.' " *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985). In the indictment, the state must assert "all material facts constituting the essential elements of an offense" so that the accused not only has "adequate notice and opportunity to defend" but also may "protect himself from any future prosecutions for the same offense." *Id.* But, "[o]rdinarily, precise times and dates are not essential elements of offenses." *Id.* at 171.

{¶18} In the context of child-abuse prosecutions, "[l]arge time windows * * * are not in conflict with constitutional notice requirements." *State v. Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, ¶ 124 (1st Dist.), quoting *State v. Morgan*, 12th Dist. Brown Nos. CA 2009-07-029 and CA 2009-08-033, 2010-Ohio-1720, ¶ 12. This is because, "[i]n many cases involving the sexual abuse of children, the victims are simply unable to remember exact dates, especially where the crimes involve a repeated course of conduct over an extended period of time." *State v. See*, 1st Dist. Hamilton Nos. C-190251 and C-190252, 2020-Ohio-2923, ¶ 17.

**{¶19}** "Child abuse cases can involve broad time periods." *Svoboda* at ¶ 126, citing *See* at ¶ 19 (one year); *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist. 1994) (one year to five years); *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61 and 2013 CA 62, 2014-Ohio-3432, ¶ 12 (four years, seven years, and eight years). The broadest time period on any single charge in Mr. Calderon's indictment was the three-month window alleged in count one. The time periods specified for the remaining counts in the indictment ranged from one day to two months. Mr. Calderon fails to demonstrate that the time periods alleged in his indictment spanned so broadly that it prevented him from effectively defending himself.

**{¶20}** Moreover, the trial court borrowed the jury instruction nearly verbatim from the *Ohio Jury Instructions*, CR Section 413.07 (Rev. May 21, 2022) (When time is not essential to an offense, "[i]t is not necessary that the state prove that the offense was committed on the exact day as charged in the (indictment)(information)(complaint). It is sufficient to prove that the offense took place on a date reasonably near the date claimed."). In light of the instruction's tracking the pattern jury instructions and the caselaw discussed above, we see nothing in the instruction that deprived the defendant of due process or that rose to the level of plain error. The second assignment of error is accordingly overruled.

IV.

**{¶21}** In his third assignment of error, Mr. Calderon asserts that his convictions for counts one through five of his indictment run counter to the manifest weight of the evidence, and challenges the sufficiency of the evidence that led to his convictions on these counts.

**{¶22}** The test for determining the sufficiency of the evidence is whether, "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 23, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Sufficiency determinations are reviewed de novo but "the court is not to weigh the evidence." *State v. McDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12; *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15 ("Our [sufficiency-of-the-evidence] review is de novo."). "And when evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *In re J.C.*, 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

**{¶23}** In reviewing a claim challenging the manifest weight of the evidence, we sit as a "thirteenth juror," *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), and "review the entire record, weigh the evidence and reasonable inferences, [and] consider the credibility of the witnesses." *State v. Barnthouse*, 1st Dist. Hamilton No. C-180286, 2019-Ohio-5209, ¶ 6. But we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple,* 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *Martin* at 175.

**{¶24}** Mr. Calderon takes issue with the inexactitude in the indictment and imprecision in L.C.'s testimony regarding the timing of counts one through five, framing both as sufficiency and manifest-weight problems.

**{¶25}** As addressed in our review of Mr. Calderon's second assignment of error, however, precise dates and times of the offenses alleged in the indictment were not required. "[T]he state is given a certain amount of latitude in child sexual abuse cases and is not strictly held to proving that a crime occurred during a period set forth in the indictment. This is so partly because the specific time and date of the offense are not elements of the offense." *State v. Gus*, 8th Dist. Cuyahoga No. 85591, 2005-Ohio-6717, ¶ 6. Here, L.C. was a minor at the time of the ongoing abuse, she was related to Mr. Calderon, she lived in the same home as Mr. Calderon, and multiple instances of sexual abuse occurred. L.C. also provided a detailed account of each instance of sexual abuse. Under such circumstances, viewing the evidence in a light most favorable to the state, sufficient evidence existed to convict Mr. Calderon. A rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Nor do we see any manifest-weight problem—the totality of the evidence leads us to conclude that the jury did not clearly lose its way and create a manifest miscarriage of justice. We accordingly overrule Mr. Calderon's third assignment of error.

V.

**{¶26}** In his fourth assignment of error, Mr. Calderon challenges the admissibility of expert testimony, faulting the trial court for allowing Ms. Harman and Ms. Cremeans to testify as expert witnesses. But because Mr. Calderon raised no objection to Ms. Harman's or Ms. Cremeans's qualifications or methodology as expert witnesses, we can review his claim only for plain error. *State v. Baston*, 85 Ohio St.3d 418, 423, 709 N.E.2d 128 (1999). His failure to develop the record on these points further limits his ability to fashion a persuasive argument.

**{¶27}** For instance, Mr. Calderon contends that neither Ms. Cremeans nor Ms. Harman satisfied the requirements of Evid.R. 702 to testify as expert witnesses on the topic of delayed and incomplete disclosure. Pursuant to Evid.R. 702, a witness may testify as an expert if the following requirements are met:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons[;]

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. Evid.R. 702.

**{¶28}** Ms. Cremeans testified that she had extensive experience working with child sexual assault victims. She received her bachelor's and master's degrees in social work, completed specialized training with the National Child Advocacy Center regarding interviewing children who allege sexual abuse, and has worked with victims of child sexual abuse for over ten years. Among her qualifications, she has conducted over 600 forensic interviews with children who have alleged physical or sexual abuse.

**{¶29}** Ms. Harman testified in a similar vein. She received her bachelor's and master's degrees in social work, earned a certificate in child abuse recognition, and is a licensed independent social worker in the state of Ohio. Beyond participating in specialized training (such as the Ohio Network of Children's Advocacy Centers' forensic interviewing training), she estimated that she has conducted over 1,000 forensic interviews with children alleging physical or sexual abuse.

**{¶30}** Mr. Calderon generally alleges that neither Ms. Cremeans nor Ms. Harman was qualified to testify as an expert, but he presents no concrete argument as to how either witness failed to meet the requirements of Evid.R. 702. And, of course, if trial counsel had concerns related to qualifications or methodology, such matters should have been explored at trial in order to provide us a comprehensive record to review. Based on the record at hand, we find no plain error in the trial court's decision to qualify Ms. Cremeans and Ms. Harman as expert witnesses.

**{¶31}** In related fashion, Mr. Calderon takes issue with an email in which the assistant prosecuting attorney allegedly told Ms. Harman what information to include in her report. Defense counsel raised this issue at trial, seizing the email as a type of smoking gun. The prosecuting attorney, however, explained that she had "told [Ms. Harman] to put the things she testifies to in the report. I'm not telling her what to say. But I know what her testimony is going to be. I needed her to put that in writing so I could turn it over to the defense." Indeed, Crim.R. 16(K) requires that expert reports be turned over in criminal cases. The trial court determined that defense counsel could use the email during her cross-examination of Ms. Harman. We find no error in the trial court's decision to admit Ms. Harman's testimony after having learned the contents of the email, and allowing defense counsel to cross-examine based on the email blunted any potential prejudice. Accordingly, we overrule Mr. Calderon's fourth assignment of error.

VI.

{¶32} In his fifth and final assignment of error, Mr. Calderon insists that he was denied his constitutional right to the effective assistance of counsel. He contends that his trial counsel proved ineffective in four respects: (1) for failing to call an expert witness to testify about delayed disclosure; (2) for failing to question and exercise peremptory challenges on particular potential jurors; (3) for failing to object to leading questions and hearsay testimony; and (4) for failing to object to Ms. Cremeans's expert testimony about delayed disclosure. Mr. Calderon also asserts that, even if each instance individually does not constitute ineffective assistance of error, these various failures taken together amount to cumulative error.

{¶33} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45, citing the Sixth Amendment to the United States Constitution and Article I, Section 10, Ohio Constitution. In reviewing an ineffective assistance of counsel claim, we consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). An appellant must demonstrate that (1) his counsel's performance was deficient and (2) that this deficient performance prejudiced the defense. *Strickland* at 687. And to show prejudice, an appellant "must prove that there exists a reasonable probability

that. were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

**{¶34}** Mr. Calderon first criticizes his trial counsel for failing to call an expert witness to testify about delayed disclosure. "Generally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy." *State v. Patton*, 1st Dist. Hamilton No. C-190694, 2021-Ohio-295, ¶ 30, citing *State v. Coleman*, 45 Ohio St.3d 298, 307-308, 544 N.E.2d 622 (1989). And "[b]ecause the decision not to present expert testimony may be tactical, the decision of trial counsel to rely on cross-examination of the state's expert does not equate to ineffective assistance of counsel." *Patton* at ¶ 30, citing *State v. McRae*, 1st Dist. Hamilton No. C-180669, 2020-Ohio-773, ¶ 19. On direct appeal, it is often impossible for us to review such claims without any proffer or other evidence in the record about how a hypothetical expert might have testified.

**{¶35}** The best that Mr. Calderon can muster is that his hoped-for expert would have undermined L.C.'s credibility and the trial outcome likely would have been different. Perhaps, but we have no way of knowing that without elaboration on what, if any, facts and data that a defense expert on the disclosure process of child sexual assault victims would have offered. Because Mr. Calderon cannot demonstrate the nature of any defense expert testimony (and how its absence affected the trial), he fails to establish that he received ineffective assistance of counsel in this regard.

**{¶36}** Mr. Calderon next argues that his trial counsel stumbled by failing to exercise peremptory challenges or question potential jurors during voir dire. In this respect, he features three different jurors: (1) a juror who was a victim of a crime in which the perpetrator was never found; (2) another juror who had "strong feelings

14

about the case because he occupationally deals with children and the case was based on a child;" and (3) a juror who was a psychologist who worked with children.

{¶37} Although defense counsel did not individually question any of these jurors, the state thoroughly questioned each of them about these potential biases. During the state's inquiry, all three identified jurors assured the court that they would be able to be fair and impartial in this case.

{¶38} After the state's questioning, defense counsel reminded the jurors that they could only find Mr. Calderon guilty if the state reached its burden of proof beyond a reasonable doubt, and the trial court excused a juror who had received years of training on child sexual assaults as a volunteer with the Catholic church. On this record, Mr. Calderon fails to demonstrate that his counsel's performance was deficient for failing to exercise peremptory challenges or otherwise further question the identified jurors during voir dire.

{¶39} Mr. Calderon also argues that his trial counsel improperly failed to object to hearsay statements, statements made in violation of the Confrontation Clause, and leading questions.

{¶40} "In all criminal prosecutions, the accused shall enjoy * * * the right to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 38, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), quoting the Sixth Amendment to the United States Constitution. The Confrontation Clause prohibits the introduction of testimonial statements by a nontestifying witness. *Crawford* at 53-54. Mr. Calderon takes issue with the testimony of Detective Andrew Stoll regarding statements made to him by L.C. and L.C.'s mother but fails to develop this argument in his appellate brief. Beyond making a conclusory allegation that his trial counsel failed to object to

15

inadmissible hearsay statements, Mr. Calderon does not make any concrete showing of prejudice. From our review of the record, Detective Stoll's statements pose no Confrontation Clause or hearsay problem. While the statements he repeated may be testimonial, they can be attributed to testifying witnesses. In fact, both L.C. and her mother's testimonies at trial included the exact statements repeated by Detective Stoll. Trial counsel had the opportunity to cross-examine L.C. and her mother on these statements. Accordingly, Mr. Calderon has failed to demonstrate that trial counsel was ineffective for failing to object to Detective Stoll's statements.

{¶41} Mr. Calderon's claim that his trial counsel failed to object to leading questions fares no better. While ordinarily "[l]eading questions should not be used on the direct examination of a witness," Evid.R. 611(C), "it is within the trial court's discretion to allow leading questions on direct examination." *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001). "Failure to object to leading questions does not constitute ineffective assistance of counsel." *State v. Bevins*, 1st Dist. Hamilton No. C-050754, 2006-Ohio-6974, ¶ 65. Moreover, many of the questions to which Mr. Calderon cites were directed toward L.C. While these questions were indisputably leading, trial counsel's shortage of objections might have reflected trial strategy of not interrupting emotional testimony by the young victim. *State v. Phillips*, 1st Dist. Hamilton No. C-190635, 2021 Ohio App. LEXIS 1780, *3 (May 26, 2021). Given the state of the record, we have no basis for second-guessing defense counsel's trial strategy. Mr. Calderon does not establish that trial counsel was ineffective for failing to object to hearsay statements and leading questions.

{¶42} Next, Mr. Calderon contends that his counsel should have objected to Ms. Cremeans's testimony about delayed disclosure. But, as discussed in our review

of the fourth assignment of error, the lack of objection or record development on this point below renders it difficult for us to assess the ineffective-assistance claim on direct review. Moreover, because Mr. Calderon only criticizes Ms. Cremeans's testimony on delayed disclosure in his ineffective assistance claim, and because Ms. Harman offered similar testimony about delayed disclosure, Mr. Calderon cannot show that the results of the trial would have been different had his counsel objected to Ms. Cremeans's testimony.

{¶43} Finally, Mr. Calderon argues that defense counsel's failure to object at various points throughout the trial amounted to cumulative error, violating his constitutional rights. However, having considered his claims both individually and in the aggregate, we find that counsel's performance did not fall outside the wide range of reasonable professional assistance.

{¶44} Accordingly, Mr. Calderon does not establish that trial counsel was ineffective in any of the four instances he identified, nor does counsel's failure to object at various points throughout his trial constitute cumulative error. Mr. Calderon's fifth assignment of error is overruled.

* * *

{¶45} In light of the foregoing analysis, we overrule all of Mr. Calderon's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

17