[Cite as *State v. Hamm*, 2017-Ohio-5595.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160230 |
| | | C-160231 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1405019 |
| | | B-1503840 |
| vs. | : | |
| QURAN HAMM, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  June 30, 2017


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John D. Hill, Jr.*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   There were two indictments in this case.  The first, numbered B-1405019, charged defendant-appellant Quran Hamm with trafficking in marijuana, three counts of having a weapon while under a disability ("WUD"), and two counts of felonious assault of a peace officer, each with three accompanying firearm specifications.  The second indictment, numbered B-1503840, charged Hamm with felonious assault of a peace officer.  Over Hamm's objection, the trial court granted the state's motion to consolidate the indictments for trial.  In the indictment numbered B-1405019, Hamm pleaded guilty to a reduced trafficking charge, and elected to proceed with a jury trial on the felonious-assault charges.  He tried the WUD charges to the bench on the evidence presented in the jury trial.  Hamm chose to try the felonious-assault charge in the B-1503840 indictment to a jury, as well.  Following trial, a jury found Hamm guilty of two of the three felonious-assault charges, with gun specifications.  And the trial court found him guilty of the WUD charges.  Hamm was sentenced to an aggregate term of 29 years' incarceration.  This appeal followed.

## Pretrial Ineffective-Assistance-of-Counsel Claim

{¶2}   Prior to trial, Hamm was represented by attorney M.J. Donovan.  In July 2015, the court allowed Donovan to withdraw from representation "for good cause shown."  Donovan did not file a motion to withdraw, nor was there a hearing concerning the reasons why Donovan wished to withdraw.  The court subsequently appointed attorneys Norman Aubin and Perry Ancona.  During a hearing on pretrial motions, Aubin and Ancona argued that a witness on the state's witness list, jailhouse-informant Christopher Hill, should be barred from testifying based on Donovan's ineffective assistance to Hamm.  During the pretrial hearing, the assistant prosecuting attorney, David McIlwain, told the court that Donovan had contacted him before she had withdrawn from Hamm's case and had told McIlwain that Hill wanted "to cooperate" against Hamm.  According to McIlwain, Donovan said that

2

McIlwain could talk to Hill. Aubin told the court that Donovan had "sent" Hill to the prosecutor's office to talk to an investigator on June 19, 2015. Based on these allegations, the defense claimed that Donovan had been ineffective and, as a remedy for Donovan's ineffectiveness, asked the court to exclude Hill as a witness. The defense also argued that Hill should be barred from testifying because his testimony would violate Hamm's due-process right to a fair trial.

{¶3}    The trial court determined that while there may have been problems with Donovan's representation of Hamm, the remedy was not to exclude Hill's testimony. It therefore denied Hamm's motion.

### The B-1405019 Indictment

{¶4}    The case proceeded to trial. In regard to the felonious-assault charges in the indictment numbered B-1405019, police officer Mark Bode testified that he had been on routine patrol in the middle of the night with police officer Thomas Weigand when he noticed a car with no license plate and a potential tinted-window violation. The officers pulled the car over. When the car stopped, a passenger jumped out and began running in the direction of Bode and Weigand's police cruiser. Bode had just exited from his cruiser when the runner fired a shot and continued running. Weigand was still in the cruiser when he heard gunfire. Neither officer could identify the runner. Weigand ordered the driver out of the car. The driver was Donnell Woods. Weigand testified that Woods was sweaty, nervous, and shaking. Weigand also testified that he could see Woods's heart beating through his shirt. He further testified that, after he had ordered Woods out of the car, Woods volunteered, "I didn't know that * * * [motherf**ker] was going to shoot at you."

{¶5}    Bode later identified Hamm as the runner based on evidence recovered from the scene. Police arrested Hamm. Hamm was held in the Hamilton County Justice Center ("HCJC") awaiting trial.

**The B-1503840 Indictment**

{¶6} The charge in the indictment numbered B-1503840 arose from events that took place while Hamm was being held in the HCJC on the B-1405019 charges. Deputy sheriff David Smucker testified that he had been delivering lunch to Hamm in Hamm's cell, and that he had had to open Hamm's cell door to hand Hamm his lunch. After he opened the door, Smucker "forcibly felt" himself fall backwards. Smucker hit his head on a nearby railing. He sustained a concussion, a lacerated ear, and a bruised arm. Smucker testified that he did not see Hamm strike him, but that following his fall, he noticed a mark under his left eye and believed that Hamm had punched him in the face. Hamm was the only inmate in the vicinity at the time that Smucker fell. Deputy sheriff John Brady, who had been working nearby, testified that he witnessed Hamm punch Smucker in the face. The defense's theory of the case was that Smucker had fallen on his own accord as a result of medication Smucker had been taking.

{¶7} Over defense counsel's objection, the court allowed the state to introduce "other acts" evidence of two other incidents involving Hamm at the HCJC. As to the first incident, corrections officer Peter Billey testified that Hamm had tried to elbow him, and that he had called officer Billey a "white devil, cracker and honky." Billey further testified that Hamm had told him "crackers crumble." The other incident involved Brady. Brady had conducted a random search of Hamm's cell. During the search, Brady heard Hamm state, "I * * * [f**kin'] hate all white people with authority." The state argued that these acts tended to show Hamm's motive and intent to commit the crime charged. The trial court allowed the evidence in, and instructed the jury that the "other acts" could only be considered in regard to the B-1503840 charge. The jury was also instructed that the "other acts" could not be considered to prove Hamm's character or that he acted in conformity with that character.

### Jailhouse Informant and "Threat" Testimony

{¶8}  Two former HCJC inmates, Christopher Hill and Kevan Williamson, testified against Hamm at trial.  Both had been incarcerated with Hamm.

{¶9}  According to Hill, Hamm had admitted to running from police late at night after being pulled over and had admitted to firing a gun at them.  Hill testified that Hamm told Hill that he had had a gun, heroin, and marijuana, and that he had run and had fired a gun because he did not want police to find any of it.  On cross-examination, defense counsel asked Hill about his dealings with attorney Donovan, who had represented both Hill and Hamm at one point.  Hill testified that he had called Donovan and told her that he had information about Hamm, and that he wanted to cooperate with the prosecutor's office.  When he was asked how Donovan responded to this request, Hill testified that Donovan "stopped me from right [sic] there," and would not discuss the matter further with him.  Hill did not know if Donovan had called the prosecutor's office on his behalf.  Hill, who had been interviewed by Detective Bryan Pitchford, could not say for certain if he had been interviewed on June 19, 2015.

{¶10}  Williamson testified that Hamm had admitted to him that he had fired a gun at police officers while running away from them, and had also admitted to hitting Smucker.

{¶11}  Hill and Williamson both testified that Hamm had threatened each of them about testifying.

{¶12}  Detective Bryan Pitchford testified that after receiving complaints about Hamm's threats against Hill and Williamson, he had inspected Hamm's cell at the HCJC.  Pitchford observed writing on the ceiling that included threats to kill Williamson and Hill for being "snitches."  The court allowed photographs of the writing to be admitted into evidence.

{¶13} On cross-examination, Pitchford, who had interviewed Hill before trial, was asked how he knew that Hill had had incriminating information concerning Hamm. Pitchford testified that "an attorney" had contacted his office with this information.

## Other-Acts Evidence

{¶14} In his first assignment of error, Hamm contends that the trial court erred by allowing "other acts" evidence, and by allowing evidence that Hamm had threatened the jailhouse informants about testifying.

{¶15} Evid.R. 404(B) and R.C. 2945.59 codify the common law with respect to evidence of other acts of wrongdoing, and are construed against admissibility. *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994), citing *State v. Burson*, 38 Ohio St.2d 157, 311 N.E.2d 526 (1974), and *State v. Hector*, 19 Ohio St.2d 167, 174-175, 249 N.E.2d 912 (1969). In pertinent part, R.C. 2945.59 allows the state to introduce evidence of a defendant's motive or intent where the evidence is "material" to the case. Evid.R. 404(B) provides that evidence of other acts "is not admissible to prove the character of a person in order to show action in conformity therewith." But the evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶16} A trial court should conduct a three-step analysis to determine the admissibility of "other acts" evidence. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 19. First, a court must "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, a court must "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other

acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Finally, the court must "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403. We review the trial court's decision to allow "other acts" into evidence under an abuse-of-discretion standard. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66.

{¶17} Hamm first argues that the other acts were "completely immaterial" to prove any fact in the state's case. This argument is without merit. The state's theory of the case was that Hamm had a motivation to hit Smucker—Hamm disliked authority figures, and especially did not like Caucasian authority figures. In opening statements, the defense contended that Smucker had not been hit, but had fallen and that his fall may have been caused by medication that Smucker had been taking. The "other acts" evidence tended to show that Hamm had wanted and intended to hit Smucker, and not that Smucker had fallen on his own accord. *See Williams* at ¶ 22 (holding evidence of the "sexual grooming" of a 16-year-old boy to be admissible in a prosecution for sexual crimes against a 14-year-old boy because the evidence would corroborate some of the state's evidence and would rebut the defense's theory that the victim had falsified the charges).

{¶18} Moreover, the elbowing and name-calling incidents were presented for a legitimate purpose under Evid.R. 404(B). "Motive" and "intent" are both permitted uses of other-acts evidence under Evid.R. 404(B) and R.C. 2945.59. Hamm's apparent distain for Caucasian guards at the HCJC helped to explain why Hamm hit Smucker—a Caucasian guard at HCJC—and also tended to show that it was his intent to hit Smucker.

{¶19} Finally, Hamm argues that the evidence should have been excluded because it was unfairly prejudicial. He argues that the jury was unable to separate the "other acts" evidence presented in the Smucker-assault case from the evidence in

the B-1405019 case. Here, the jury was properly instructed that the "other acts" could only be considered in connection with the Smucker assault. The trial court also properly instructed the jury that the evidence could not be considered to prove Hamm's character or that he acted in conformity with that character in committing the crime charged. A jury is presumed to follow the trial court's instructions. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). We therefore hold that the trial court did not abuse its discretion in admitting evidence of these incidents.

{¶20} Hamm next argues that evidence of Hamm's threats towards Hill and Williamson was improperly admitted "other acts" evidence. This argument is not well taken. Evidence of threats or intimidation of witnesses reflects a consciousness of guilt. *State v. Richey*, 64 Ohio St.3d 353, 357, 595 N.E.2d 915 (1992). The evidence was admissible as an admission by conduct. *State v. Parnell*, 10th Dist. Franklin No. 11AP-257, 2011-Ohio-6564, ¶ 30-35; *State v. Soke*, 105 Ohio App.3d 226, 250, 663 N.E.2d 986 (8th Dist.1995).

{¶21} Hamm's first assignment of error is overruled.

### Joinder

{¶22} In his second assignment of error, Hamm contends that the trial court abused its discretion by joining his indictments for trial.

{¶23} The law favors joinder of multiple offenses against the same defendant in a single trial. *State v. Torres,* 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden of affirmatively showing that his rights were prejudiced. *Torres* at syllabus. Joinder is not prejudicial if the evidence relevant to the offenses (1) would be admissible in the trial of the other offenses as other-acts evidence under Evid.R. 404(B) or (2) is simple and direct. *State v. Kennedy*, 2013-Ohio-4221, 998 N.E.3d 1189, ¶ 32, (1st Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

{¶24} Here the evidence was simple and direct. The offenses involved different victims, and the acts committed against the officers in the first indictment were separate in time and location from those in the second indictment. The state's presentation of the evidence with respect to each of the charges was direct and uncomplicated, thus enabling the jury to separate the proof for each offense. And the trial court instructed the jury to consider each count separately. We therefore find no abuse of discretion in the trial court's decision to join the indictments for trial.

{¶25} Hamm's second assignment of error is overruled.

## Hearsay

{¶26} In his third assignment of error, Hamm contends that the trial court erred when it allowed Weigand to testify that Woods said, "I didn't know that * * * [motherf**ker] was going to shoot at you." Hamm claims that the statement was inadmissible hearsay. This argument has no merit.

{¶27} Hamm did not object to Woods's statement on the basis that it was hearsay. He has therefore forfeited all but plain error on appeal. Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23. Under the plain-error doctrine, the appellant must show an "error," meaning a deviation from a legal rule, and the error must constitute an obvious defect in the trial court's proceedings. *Rogers* at ¶ 22. Here there was no error, and accordingly there was no plain error.

{¶28} "The admission or exclusion of relevant evidence lies within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. The trial court in this case did not abuse its discretion because Woods's statement was properly admitted as an excited utterance. *See* Evid.R. 803(2). In *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus, the Ohio Supreme Court held that

A four-part test is applied to determine the admissibility of statements as an excited utterance:

(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,

(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

(Emphasis sic.)

{¶29} Here, Weigand testified that Woods made the statement shortly after being stopped by police and within a minute or two of hearing a gunshot. Weigand testified that Woods appeared nervous, was sweating and shaking, and that Woods's heartbeat was visible through his shirt. The statement, "I didn't know that * * * [motherf**ker] was going to shoot at you," related to the startling event, i.e., the shooting. Woods was present in the vehicle from which Hamm had just exited when the shooting occurred. Hence, the trial court did not abuse its discretion

in allowing this statement into evidence.  There was no error, and no plain error.  Hamm's third assignment of error is overruled.

## Confrontation Clause

{¶30} In his fourth assignment of error, Hamm claims that admitting Woods's statement violated his Sixth Amendment right to confront the witnesses against him.  This argument is also not well taken.

{¶31}   Hamm did not raise a confrontation-clause objection in the trial court.  We therefore are limited to review for plain error.  Crim.R. 52(B); *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22-23.

{¶32}   The Sixth Amendment to the United States Constitution provides, in pertinent part, that: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."  The Confrontation Clause bars the " 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.' "  *State v. Lewis*, 1st Dist. Hamilton Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶ 29, quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  A "testimonial statement" is one that is "made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' "  *Lewis* at ¶ 31, quoting *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus, quoting *Crawford* at 52.  At a minimum, the term "testimonial" applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford* at 68.  The *Crawford* court noted these practices bore "the closest kinship to the abuses at which the Confrontation Clause was directed."  *Id.*

{¶33}  Here, Woods's "excited utterance" was not testimonial in nature.  It was not in response to police questioning, nor was it offered during any type of

11

formal proceeding or questioning. Rather, by definition, it was volunteered under circumstances where there was no time for the speaker to reflect and falsify his or her account of an event. Therefore, this was not the type of statement that implicates the Confrontation Clause. *See State v. Byrd,* 160 Ohio App.3d 538, 2005-Ohio-1902, 828 N.E.2d 133, ¶ 17 (2d Dist.), citing *State v. Williams,* 2d Dist. Montgomery No. 20368, 2005-Ohio-213, ¶ 20 (an excited utterance is generally nontestimonial in nature).

{¶34} Therefore, there was no plain error. Hamm's fourth assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶35} In his fifth assignment of error, Hamm claims that he was denied the effective assistance of counsel. To prove ineffective assistance of counsel, a defendant has to demonstrate that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Prejudice results when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694; *Bradley* at 142.

{¶36} Hamm claims that he was denied the effective assistance of counsel because attorney M.J. Donovan, who had represented him prior to trial, had failed to immediately withdraw from representing both Hamm and Hill upon becoming aware that Hill wanted to provide the state with evidence against Hamm. Hamm also contends that Donovan was ineffective because she had assisted Hill in arranging a meeting with Detective Pitchford so that Hill could provide the state with evidence against Hamm.

{¶37} Hamm's arguments are based in large part on unsworn representations of counsel made during a hearing on pretrial motions. To the extent

that our record contains some evidence concerning Donovan's representation of Hamm, that evidence is inconclusive.

{¶38} First, the record is inconclusive concerning Donovan's continuing representation of Hamm and Hill after she learned that Hill had wanted to provide evidence against Hamm. It appears that Donovan may have been representing both Hill and Hamm at the time that Hill had spoken to Pitchford. But the record does not conclusively indicate the exact date that Hill had spoken with Pitchford. Further, the record does not indicate whether Donovan immediately moved to withdraw from representing Hamm and Hill upon learning of her conflict, as Hamm contends that she should have. Instead, it reflects only that the trial court allowed her to withdraw on July 15, 2015, "for good cause shown." And our record does not reflect whether or when she moved to withdraw from representing Hill. Finally, Hamm does not expound on the reasons why Donovan was required to withdraw from representing Hill, and we do not address here whether Donovan was required to do so.

{¶39} Second, we are unable to determine whether Donovan assisted Hill in providing information to Pitchford while she represented Hamm. Hill testified at trial that he had contacted Donovan and told her that he had information about Hamm. Hill further stated that, Donovan "stopped me from [sic] right there," and refused to speak to him about the matter. Hill did not know whether Donovan had contacted the prosecutor's office. And Detective Pitchford testified that "an attorney" had contacted him about Hill.

{¶40} Overall, we do not have a reliable basis for determining what Donovan did or said. In sum, Hamm's challenge depends for its resolution upon evidence outside of the trial record. We therefore must overrule this assignment of error.

13

**Admission of Testimony**

{¶41} In his sixth assignment of error, Hamm contends that the trial court abused its discretion and denied Hamm his due-process right to a fair trial by admitting Hill's testimony.

{¶42} Hamm argues that the trial court should have excluded Hill's testimony because its "potential prejudicial impact or potential to mislead the jury substantially outweighs its probative value." In support, he cites Evid.R. 403. Hamm did not raise an Evid.R. 403 argument in the trial court. We therefore are limited to review for plain error. Crim.R. 52(B); *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22-23.

{¶43} Evid.R. 403(A) provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The admission or exclusion of relevant evidence lies within the trial court's sound discretion. *Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.

{¶44} Hamm first seems to argue that the "unfair prejudice" in this case was that Donovan had violated Hamm's Sixth Amendment right to counsel when she allegedly contacted the prosecutor's office to arrange for Hill to offer evidence against Hamm. Even assuming that this occurred, Hamm's requested relief is not supported by law. We find no case law, and Hamm cites none, for the proposition that the "prejudicial effect" contemplated by Evid.R. 403 includes a violation of the Sixth Amendment right to the effective assistance of counsel. In other words, there is no "exclusionary rule" for Sixth Amendment violations.

{¶45} Hamm also seems to argue that the court abused its discretion because Hill's testimony was misleading to the jury, thereby violating Hamm's due-process right to a fair trial. Hamm claims that "[t]he circumstances under which the State obtained Hill's testimony raise serious questions regarding the reliability and true origin of the information he related to the jury." But Hill was subject to cross-

examination. Defense counsel fully explored Hill's connection to Donovan, thereby testing the credibility and reliability of his testimony. *See State v. Nields*, 93 Ohio St.3d 6, 28, 752 N.E.2d 859 (2001) ("The procedural safeguard for the defense to test the credibility and reliability of [a jailhouse informant's] testimony was cross-examination."). Hamm has not shown how Hill's testimony so "misled" the jury as to mandate its exclusion under Evid.R. 403.

{¶46} We therefore find no error, and no plain error.

### Cumulative Error

{¶47} In his seventh assignment of error, Hamm claims that the cumulative effect of the errors at trial deprived him of his right to a fair trial. Under the cumulative-error doctrine, a conviction may be reversed where a defendant has been denied a fair trial by the cumulative effect of errors that have individually been deemed harmless. *State v. Cook*, 1st Dist. Hamilton No. C-140118, 2014-Ohio-4900, ¶ 15, citing *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. We have found no error, harmless or otherwise. Accordingly, the cumulative-error doctrine does not apply. This assignment of error is therefore overruled.

{¶48} The judgments of the trial court are affirmed.

Judgments affirmed.

**CUNNINGHAM, P.J.,** and **MYERS, J.,** concur.

Please note:

This court has recorded its own entry this date.