[Cite as *State v. Wilcox*, 2023-Ohio-2940.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220472 |
| | | TRIAL NO. B-2004192 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| QUANTEZ WILCOX, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 23, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} Following a shooting outside the library in downtown Cincinnati, defendant-appellant Quantez Wilcox was charged with and found guilty of murder, felonious assault, having weapons under disability, and tampering with evidence. On appeal, he raises six assignments of error, claiming, among other things, a violation of his Confrontation Clause rights. Because we agree that Mr. Wilcox's Confrontation Clause rights were violated when the trial court allowed a prejudicial video interview of a nontestifying witness to be played at trial, we reverse the trial court's judgment with respect to Mr. Wilcox's murder conviction (the felonious assault charge and second murder charge were merged), and we remand this cause for a new trial to be held in accordance with this opinion and the law. We otherwise affirm the trial court's judgment, including the convictions for tampering with evidence and having weapons under disability.

I.

{¶2} During an August 2020 evening, Mr. Wilcox parked near the public library in downtown Cincinnati. As he sat in the driver's seat of his silver Mazda, he was approached by victim Keshawn Turner—his ex-girlfriend's new boyfriend. The two quarreled. As the dispute escalated, Mr. Wilcox fired a single shot, which struck Mr. Turner in the chest and later killed him. The sole witness to the shooting was Doniesha Monroe—Mr. Turner's girlfriend and Mr. Wilcox's ex-girlfriend.

{¶3} Kenneth Rue was working as a downtown ambassador for 3CDC that evening. Walking near the downtown library at approximately 8:45 p.m., he heard a loud bang and then saw people running. He witnessed Mr. Turner fall to the ground multiple times then pick himself up, and then followed him into an alley where he

collapsed for the final time. Mr. Rue radioed the police to recount what he had seen. He then knelt beside Mr. Turner to tell him that police were on the way. Mr. Rue did not see a gun in Mr. Turner's possession.

{¶4} Another witness, Haneen Maghathe, also heard the gunshot and saw Mr. Turner and Ms. Monroe run into the alley. She followed the pair into the alley and recorded the scene with her phone. She described Ms. Monroe as "frantic" and "scared." In the recording, Ms. Monroe identified Mr. Wilcox as the shooter. This video was shown at trial.

{¶5} Officers David Price and Nicholas Casch of the Cincinnati Police Department were each dispatched to the scene. They both wore body cameras, which captured the following events. Officer Price spoke with Ms. Monroe about the events of the evening, and he also talked with Ms. Maghathe. Officer Casch saw Mr. Turner lying motionless while another officer performed CPR. Two other officers arrived and began to render first aid services to the victim. They cut off Mr. Turner's clothing to find the bullet hole, and as they rolled him over, they found a loaded firearm in a black holster behind his back. Officer Casch took possession of the 9 mm handgun, removing the magazine and a round in the chamber before depositing it in the back of his cruiser.

{¶6} Minutes earlier, a street over, Cincinnati Police Officer Cian McGrath had just left the Hamilton County Justice Center and was heading west on Ninth Street when he heard the gunshot. He saw a silver Mazda fly through an intersection at a red light, and he initiated a traffic stop. Mr. Wilcox pulled over. As Officer McGrath approached the car, Mr. Wilcox opened the driver's door with his hands out. He told Officer McGrath that his brakes had failed, and Officer McGrath noted that he was

3

sweating and seemed nervous. After hearing on his radio that Mr. Wilcox was suspected of the shooting, Officer McGrath took him into custody.

{¶7} William Sweet also witnessed a person driving fast just before he was pulled over. He saw the driver throw something out of his window. Mr. Sweet crossed the street to investigate, discovering a gun. He picked it up and turned it over to a police officer. Mr. Wilcox's DNA was discovered on the gun. Additionally, a firearms expert determined that the bullet found in Mr. Turner's back was fired from the gun that Mr. Wilcox tossed from his vehicle, and a trace evidence examiner from the Hamilton County Coroner's Office prepared a report showing that Mr. Wilcox's hands and the driver's side window of his car tested positive for gunshot residue.

{¶8} During his initial interview with Cincinnati Police Homicide Detective Sandy Sieving, Mr. Wilcox professed his innocence. By the time of trial, however, Mr. Wilcox admitted to the shooting but insisted that he acted in self-defense. He testified that he was sensitive to violence, as he had been shot when he was 18 years old and he had lost a cousin and two friends in shootings. At trial, when describing what happened the night of the shooting, Mr. Wilcox explained that Ms. Monroe had called him earlier in the night and asked him to bring her some food. He picked up the food and drove downtown to the library, where she requested they meet. After he parked, Ms. Monroe approached his car and he handed her the food. The two chatted for a bit. At this point, Mr. Turner came up to the car. Mr. Wilcox explained that he had never met Mr. Turner before and did not know of his relationship with Ms. Monroe. Mr. Wilcox felt threatened by statements made by Mr. Turner and testified that he saw him reach for his gun holster. Fearing that Mr. Turner would shoot him, Mr. Wilcox grabbed his own gun from the passenger seat and shot Mr. Turner. He then drove off

4

quickly. Soon after he drove off, he threw the gun out the window before Officer McGrath stopped him. Mr. Wilcox also admitted that he was not initially truthful with Detective Sieving about what happened because he did not trust the police.

**{¶9}** Ms. Monroe did not show up to testify at trial, but police body-worn camera footage from the night of the murder was played before the jury. The footage included a nearly 10-minute interview between Officer Price and Ms. Monroe during which she was questioned about the murder.

**{¶10}** Mr. Wilcox was indicted on two counts of murder, with specifications, in violation of R.C. 2903.02(A) and (B); two counts of felonious assault, with specifications, in violation of R.C. 2903.11(A); one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3); and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1). The state dismissed count 4 for felonious assault immediately before trial. Mr. Wilcox testified at trial, admitting to shooting Mr. Turner, having a weapon while under disability, and tampering with evidence, but proceeded to argue that he acted in self-defense. Unpersuaded by his defense, the jury found Mr. Wilcox guilty of all five remaining charges.

**{¶11}** The trial court sentenced Mr. Wilcox to an indefinite term of 15 years to life for count 1 (murder), plus 5 years on the firearm specification, to be served consecutively. The second murder count and the felonious assault count were merged with count 1. For counts 5 (weapons under disability) and 6 (tampering with evidence), Mr. Wilcox received 36 months each, to be served consecutively to both count 1 and each other. The aggregate sentence totaled 26 years to life in the Ohio Department of Corrections. Mr. Wilcox now appeals.

II.

**{¶12}** In his first assignment of error, Mr. Wilcox maintains that the trial court erred when it allowed into evidence certain statements made by Ms. Monroe, who did not testify at trial. He takes issue with two videos that were played at trial—the video recorded by Ms. Maghathe and Officer Price's body-worn camera footage.

**{¶13}** "[T]he Confrontation Clause prohibits 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " *State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 10 (1st Dist.), quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), paragraph (a) of the syllabus. The clause exists " 'to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' " *Id.*, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 384, 721 N.E.2d 52 (2000). And "we review objections to evidence based on the Confrontation Clause de novo." *Id.*, citing *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 14 (9th Dist.), and *State v. Burton*, 2017-Ohio-322, 77 N.E.3d 449, ¶ 16 (4th Dist.).

**{¶14}** In *Crawford*, the United States Supreme Court established a framework for determining whether the Confrontation Clause bars the admission of evidence. *Crawford* at 68-69. The Court distinguished between testimonial and nontestimonial statements, explaining that nontestimonial statements do not implicate the Confrontation Clause while testimonial statements by a nontestifying witness are inadmissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine her. *Id.* At minimum, testimonial statements include

"prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

{¶15} We begin by reviewing the admissibility of the video recorded by Ms. Maghathe. This clip is short—just 15 seconds in length—and features Ms. Monroe crying and screaming as a police officer attempts to resuscitate Mr. Turner. Ms. Maghathe asks, "Who did this?" and Ms. Monroe replies, "Quantez Wilcox." Then, when questioned by Ms. Maghathe, "Are they still here?" (presumably, in reference to Mr. Wilcox), Ms. Monroe replies, "No."

{¶16} Ms. Monroe's informal and emotional statements are not testimonial in nature. They were not made in response to police questioning, *see Ohio v. Clark*, 576 U.S. 237, 249, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015), nor were they made during any formal proceeding or questioning. *See State v. Hamm*, 1st Dist. Hamilton Nos. C-160230 and C-160231, 2017-Ohio-5595, ¶ 33. Her statements were "volunteered under circumstances where there was no time for the speaker to reflect and falsify * * * her account of [the] event." *Id.* It cannot be said that Ms. Monroe was "attempting to create an out-of-court substitute for trial testimony." *See State v. James*, 7th Dist. Mahoning No. 18 MA 0064, 2020-Ohio-4289, ¶ 28. Therefore, these statements are nontestimonial and do not implicate the Confrontation Clause. The trial court did not err in admitting the video containing these statements into evidence.

{¶17} We reach a different conclusion in our analysis of the admissibility of Officer Price's body-worn camera footage, which features a lengthy police interview of Ms. Monroe. Again, Mr. Wilcox argues that the admission of this video violated his Confrontation Clause rights because Ms. Monroe's statements contained therein were

7

testimonial, and she did not testify at trial, nor did he have a prior opportunity to cross-examine her.

{¶18} In its appellate brief, the state does not substantively address the argument, beyond making a general allegation that Ms. Monroe's statements fell within certain categories of admissible hearsay statements. It seems to acknowledge that the statements were testimonial in nature, but it does not clarify its position. And it fails to reconcile the distinction between admissibility for hearsay purposes and constitutional requirements under the Confrontation Clause.

{¶19} The Supreme Court has held that statements made in response to police questioning "are testimonial when the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). This court elaborated on this point in *Smith*, 2019-Ohio-3257, 141 N.E.3d 590, at ¶ 12-13, explaining that police body-worn camera footage of a nontestifying witness included testimonial statements that were offered in the presence of a police officer—presumably in his protection—and the witness was no longer in danger. In *Smith*, there was no ongoing emergency or threat of harm, and the primary purpose of the discussion between the officer and the witness was to ascertain what had happened. *Id*. at ¶ 13.

{¶20} Unlike the video filmed by Ms. Maghathe, the discussion with Ms. Monroe captured on Officer Price's body-worn camera footage lasts for over ten minutes and involves extensive police questioning. While the video does contain several statements in response to police questions that could be viewed as addressing

an ongoing emergency—including Ms. Monroe's answers to questions regarding who the perpetrator was, what car he was driving, and which direction he drove off after the shooting—the main thrust of the video implicates the Confrontation Clause. Officer Price and Ms. Monroe were notified about halfway through the video that Mr. Wilcox has been apprehended, ending any ongoing emergency.

**{¶21}** But Officer Price continued asking Ms. Monroe questions about the offense, including, "So what was the other guy [Mr. Wilcox] mad about?" Ms. Monroe embarked on a narration of the events that led to the shooting. She implicated Mr. Wilcox in a variety of unsavory actions, including stalking her and breaking into her car, and repeatedly indicated that she kept reporting him for these actions. While making these statements, Ms. Monroe was clearly distraught—crying and her voice wrought with emotion. Moreover, she shared with the officer that she is pregnant with Mr. Turner's child, and another police officer expressed concerns that her emotional state might result in harm to the fetus. These statements were made in response to police questioning, *see Clark*, 576 U.S. at 249, 135 S.Ct. 2173, 192 L.Ed.2d 306, and at a point when the circumstances objectively indicated that there was no longer an ongoing emergency. *See Davis* at 822. We presume, then, that the primary purpose of Officer Price's questioning of Ms. Monroe was to gather facts regarding a past crime for later prosecution. *See Smith* at ¶ 13.

**{¶22}** Also during the video, Ms. Monroe shared an account of the shooting that differed drastically from the account Mr. Wilcox presented at trial. She explained that she and Mr. Wilcox had been in an ongoing dispute due to him stalking her and breaking her car windows, and that he shot out of his car window as she and Mr. Turner were just "walking past."

9

**{¶23}** Having determined that the statements contained in Officer Price's body-worn camera footage were testimonial in nature, they could only be admissible if Ms. Monroe were present and available for cross-examination or if Mr. Wilcox had a prior opportunity to cross-examine her. *See Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.E.2d 177. As neither of these circumstances occurred, the admission of her police interview violated the requirements of the Confrontation Clause. We proceed to review this Confrontation Clause violation for harmless error. *See Smith*, 2019-Ohio-3257, 141 N.E.3d 590, at ¶ 14; *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 178 ("Confrontation Clause claims are * * * subject to harmless-error analysis.").

**{¶24}** Crim.R. 52(A) governs the harmless error standard in the context of a criminal case: "Under the harmless-error standard of review, the state bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Smith*, 2023-Ohio-603, 209 N.E.3d 883, ¶ 103 (8th Dist.), citing *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 55. Mr. Wilcox asserts that Ms. Monroe's statements in Officer Price's body-worn camera video substantially prejudiced him by undermining his self-defense claim. The state did not address the issue, other than to summarily conclude (without analysis) that any error was harmless.

**{¶25}** The Ohio Supreme Court established a three-part test for determining whether an error in the admission of evidence affected the substantial rights of the defendant, thereby necessitating a new trial, or whether the admission of that evidence constituted harmless error:

First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

(Citations omitted.) *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153. Applying this analysis to the evidence in this case, we find that the erroneous admission of Ms. Monroe's statements to Officer Price regarding the shooting was not harmless error and affected Mr. Wilcox's substantial rights with respect to his murder conviction.

{¶26} First, Mr. Wilcox suffered prejudice by virtue of the absence of other witnesses to the shooting. Because the only surviving persons with personal knowledge of the events giving rise to the murder charge were himself and Ms. Monroe, we can reasonably infer that her statements carried particular weight with the jury. This is especially true in light of the fact that " '[s]elf-defense claims are generally an issue of credibility.' " *State v. Grayson*, 8th Dist. Cuyahoga No. 110388, 2021-Ohio-4312, ¶ 24, quoting *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. Ms. Monroe's statements undermined Mr. Wilcox's credibility, thus tilting the scale away from the jury finding that he acted in self-defense. And many of Ms. Monroe's statements, particularly those expressing her distress at the events and those regarding her pregnancy, painted her as a sympathetic witness, further chipping away at Mr. Wilcox's defense by prejudicing the jury against him. Therefore, Mr.

Wilcox was prejudiced by the erroneous admission of Officer Price's body-worn camera footage containing statements that undermined his self-defense claim. *See Harris* at ¶ 37, 39.

**{¶27}** Second, to determine whether error in the admission of evidence is harmless beyond a reasonable doubt, we consider whether " 'there is [no] reasonable possibility that the improperly admitted evidence contributed to the conviction.' " *Smith*, 2023-Ohio-603, 209 N.E.3d 883, at ¶ 106, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 192. Ohio's recently amended self-defense law requires that, "if there is evidence presented at trial that tends to support that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another." *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1). "Once the initial showing is made, the burden of persuasion requires the state to disprove at least one of the elements of self-defense * * * beyond a reasonable doubt." *Id.* at ¶ 49. Specifically, to carry its burden of disproving self-defense involving deadly force, the state must "[prove] beyond a reasonable doubt that the defendant (1) was at fault in creating the situation giving rise to the affray; or (2) did not have a bona fide belief that [he] was in imminent danger of death or great bodily harm for which the use of deadly force was [his] only means of escape." *Id.* at ¶ 50; *see State v. Mitchell*, 1st Dist. Hamilton No. C-220471, 2023-Ohio-2604, ¶ 17, citing R.C. 2901.09(B) (explaining that a person no longer has a duty to retreat before using self-defense if that person is in a place in which he or she has a lawful right to be).

{**¶28**} In the video, Ms. Monroe's description of the events of the night differs critically from Mr. Wilcox's—she states that he drove past her and Mr. Turner and shot out of his car window at the pair, hitting Mr. Turner. She mentions nothing of the interaction that Mr. Wilcox claims occurred between him and Mr. Turner that led to his belief that he was threatened. Considering this, in addition to the above prejudice analysis, Ms. Monroe's statements in Officer Price's body-worn camera video surely prejudiced the jury against Mr. Wilcox, making the jurors less likely to believe that he acted in self-defense. Therefore, there exists a reasonable possibility that the improperly admitted evidence contributed to his murder conviction. *See Smith*, 2023-Ohio-603, 209 N.E.3d 883, at ¶ 106.

{**¶29**} Finally, as to the third prong of the harmless error analysis, the state's case is much weaker without the offending evidence. Again, Mr. Wilcox's testimony describing that he saw Mr. Turner reach for his gun and felt threatened, in addition to the police finding a gun on Mr. Turner, certainly tended to support that he resorted to the use of deadly force in self-defense. The state was therefore required to disprove self-defense beyond a reasonable doubt. And in the absence of Ms. Monroe's statements casting doubt on Mr. Wilcox's character, very little evidence presented by the state tends to prove that he did not act in self-defense. Therefore, her statements could easily have tipped the scales in favor of a conviction.

{**¶30**} We sustain Mr. Wilcox's first assignment of error in part, holding that the trial court erred in allowing Officer Price's body-worn camera footage to be shown at trial. But we overrule this assignment of error insofar as it relates to the admission of the video recorded by Ms. Maghathe. Mr. Wilcox is entitled to a new trial on the murder charge at which the jury can reach a decision without considering the

improper and prejudicial statements made by Ms. Monroe in Officer Price's body-worn camera footage.

**{¶31}** But the new trial only implicates the murder charge (we have no jurisdiction to address his felonious assault or second murder counts because they were merged with the first count for murder). Self-defense is available as a defense to a defendant's intentional use of force, *see Grayson*, 8th Dist. Cuyahoga No. 110388, 2021-Ohio-4312, at ¶ 25, and neither the offense of having weapons while under disability nor the offense of tampering with evidence involves a use of force. *See* R.C. 2923.13(A)(3); R.C. 2921.12(A)(1). Therefore, Mr. Wilcox's self-defense claim would only serve as a defense to the murder charge, not to his convictions for tampering with evidence or having weapons while under disability.

**{¶32}** We proceed to address Mr. Wilcox's remaining assignments of error insofar as they relate to his convictions for having weapons under disability and tampering with evidence, as the improper evidence does not bear on these convictions. Our resolution of this assignment of error renders Mr. Wilcox's remaining challenges to his murder conviction moot, *see State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 16, citing App.R. 12(A)(1)(c), except for his second assignment of error—which we explain in further detail below.

III.

**{¶33}** In his second assignment and third assignments of error—which he argues together—Mr. Wilcox claims that his conviction for murder was based on insufficient evidence and against the manifest weight of the evidence. Sustaining the first assignment of error renders his manifest weight challenge to these convictions moot. *See Parrish* at ¶ 16, citing App.R. 12(A)(1)(c). But we are still required to

14

address Mr. Wilcox's second assignment of error challenging the sufficiency of the evidence underpinning his murder conviction, because "[a]n assignment of error challenging the sufficiency of the evidence is potentially dispositive of a defendant's conviction and may not be rendered moot by a remand on any other assignment of error." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 2.

**{¶34}** To determine the sufficiency of the evidence to support a criminal conviction, we consider whether, after viewing the evidence in the light most favorable to the state, any reasonable trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We review sufficiency determinations de novo, *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15, and we must not weigh the evidence. *MacDonald* at ¶ 12.

**{¶35}** First, Mr. Wilcox argues that, because the evidence shows that he acted in self-defense, there exists insufficient evidence to convict on the murder count. However, this issue is one of manifest weight so we decline to review it for sufficiency. *See State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 27 ("The state's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal, and the [appellate court] correctly declined to review the state's rebuttal of self-defense for sufficiency of the evidence.").

**{¶36}** Second, Mr. Wilcox insists that the state failed to introduce sufficient evidence for the factfinder to reasonably conclude that the location of the offense was in Hamilton County, Ohio.

{¶37} " 'Under Article I, Section 10 [of the Ohio Constitution] and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense.' " *State v. Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, ¶ 13, quoting *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. "[V]enue must be proved beyond a reasonable doubt in a criminal case." *State v. Robinson*, 1st Dist. Hamilton No. C-180153, 2018-Ohio-4433, ¶ 4, quoting *State v. Gardner*, 42 Ohio App.3d 157, 158, 536 N.E.2d 1187 (1st Dist.1987).

{¶38} Here, Officers Price and Casch, Mr. Sweet, and Detective Sieving all testified that the crime scene was in Hamilton County, Ohio. Each of them had personal knowledge of the location of the crime scene. Because a civilian witness, a Cincinnati Police homicide detective, and multiple police officers who responded to the scene of the crime—all with personal knowledge of the location of the crime scene—testified that the offense occurred in Hamilton County, Ohio, any reasonable trier of fact could have found that venue was proven beyond a reasonable doubt.

{¶39} We overrule Mr. Wilcox's second assignment of error, and his third assignment of error is moot and we decline to address it.

IV.

{¶40} In his fourth assignment of error, Mr. Wilcox insists that he was denied his right to the effective assistance of counsel. He specifically takes issue with trial counsel's failure to cross-examine a number of witnesses at trial.

{¶41} " 'In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions.' " *State v. Solorio*, 1st Dist. Hamilton No. C-210526, 2022-Ohio-3749, ¶ 33, quoting *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45, citing the Sixth

Amendment to the United States Constitution, and Article I, Section 10, Ohio Constitution. To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, a defendant "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶42} On the record before us, it cannot be said that trial counsel's failure to cross-examine the identified witnesses resulted in prejudice to Mr. Wilcox with respect to his weapons under disability and tampering with evidence charges. While testifying, Mr. Wilcox admitted to having weapons under disability and to tampering with evidence. These charges almost certainly resulted in convictions due to Mr. Wilcox's admission of guilt, so there does not exist a reasonable probability cross-examining certain witnesses would have changed the outcome of the trial with respect to these two convictions. Because a defendant must prove both deficient performance and prejudice in order to prevail on an ineffective assistance claim, *see Strickland* at 687, and Mr. Wilcox cannot show prejudice, there is no need to consider whether trial counsel's performance was deficient. We overrule his fourth assignment of error.

V.

{¶43} In his fifth assignment of error, Mr. Wilcox argues that the trial court abused its discretion when it refused to include certain requested jury instructions on self-defense. This assignment of error relates only to his murder conviction, so it is moot in light of our resolution of the first assignment of error. *See* App.R. 12(A)(1)(c).

17

VI.

{¶44} In his sixth and final assignment of error, Mr. Wilcox challenges the length of his sentence. He argues that, based on the record before it, the trial court should have made his sentences for counts 5 and 6—for having weapons under disability and tampering with evidence, respectively—concurrent to his murder sentence.

{¶45} Because our resolution of the first assignment of error reverses Mr. Wilcox's murder conviction and sentence and orders a new trial on that charge, there no longer presently exists a sentence on the murder charge to which Mr. Wilcox's tampering with evidence and weapons under disability sentences could run concurrently. This issue is therefore moot. *See* App.R. 12(A)(1)(c).

\*       \*       \*

{¶46} In light of the foregoing analysis, we sustain Mr. Wilcox's first assignment of error in part. We reverse the trial court's judgment in part and remand this cause for a new trial on the murder charge, consistent with this opinion and the law. We otherwise affirm the trial court's judgment, overruling his fourth assignment of error with respect to Mr. Wilcox's convictions for having weapons under disability and tampering with evidence. We also overrule his second assignment of error, and his third, fifth, and sixth assignments of error are moot.

Judgment accordingly.

**KINSLEY, J.,** concurs.
**WINKLER, J.**, concurring in part and dissenting in part.

**WINKLER**, **J.**, concurring in part and dissenting in part.

18

**{¶47}** I respectfully dissent from the majority's holding that Monroe's statements captured by Officer Price's body-worn camera were testimonial, and that therefore, their admission into evidence violated Wilcox's right to confront the witnesses against him. I am convinced that Monroe's statements were nontestimonial and were admissible into evidence under the excited-utterance exception to the hearsay rule.

**{¶48}** The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53-54.

**{¶49}** The Court stated in *Crawford* that the "use of ex parte examinations as evidence against the accused" is the principal evil the clause was meant to remedy. *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 13, quoting *Crawford* at 50. It distinguished between testimonial and nontestimonial hearsay and held that only testimonial statements implicate the Confrontation Clause. *Crawford* at 68; *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15-16.

**{¶50}** The right to confrontation does not extend to nontestimonial hearsay because that form of hearsay does not implicate the "Sixth Amendment's core concerns." *Crawford* at 51; *State v. Lewis*, 1st Dist. Hamilton Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶ 30. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford States flexibility in their development of

19

hearsay law * * *," or to adopt an "approach that exempt[s] such statements from Confrontation Clause scrutiny altogether." *Crawford* at 68.

**{¶51}** I agree with the majority that Monroe's statements in the cell phone video taken by Maghathe were nontestimonial. They were admissible as excited utterances under Evid.R. 803(B)(2). It provides, "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

**{¶52}** Monroe was reacting to the startling effect of her boyfriend being shot minutes earlier by Wilcox. Maghathe described her as "frantic and scared." Officer Price described her as hysterical, crying and beating her chest, all of which is confirmed by the video. Monroe's statements were volunteered under circumstances where there was no time to reflect and falsify her account of the event. *See State v. Goshade*, 1st Dist. Hamilton No. C-120586, 2013-Ohio-4457, ¶ 8-9; *State v. Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 26-29.

**{¶53}** Similarly, I would hold that Monroe's statements to Officer Price minutes after the shooting were nontestimonial. In *Crawford*, the Supreme Court declined to "spell out a comprehensive definition" of "testimonial." It stated that the term "applies at a minimum" to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. *Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶ 15; *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 13. Police interrogations "fall squarely within" the class of statements the Confrontation Clause seeks to exclude." *Crawford*, 541 U.S. at 53, 124 S.Ct. 1354, 158 L.Ed.2d 177; *Stahl* at ¶ 17. Nevertheless, the Court made clear that

20

it was using the term "interrogation" in "its colloquial, rather than any technical legal sense." Police interrogation could take many forms and not all would result in testimonial statements. *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *State v. Nix*, 1st Dist. Hamilton No. C-030696, 2004-Ohio-5502, ¶ 74.

{¶54} In the context of excited utterances made to police officers, the United States Supreme Court has held that the key to determining whether statements are testimonial is whether the questioning by police or a police counterpart was seeking information needed to respond to a present emergency or whether it was seeking information about past events as part of the investigation of a crime. *Davis* at 822; *Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, at ¶ 35.

{¶55} It stated:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis* at 822.

{¶56} In assessing whether a statement is testimonial, the court must "objectively evaluate the circumstances in which the encounter occur[red] and the statements and actions of the parties." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-

5677, 984 N.E.2d 948, ¶ 150, quoting *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The focus is not on the subjective or actual purpose or intent of the interrogator or the declarant, but on "the purpose that reasonable participants would have had under the same circumstances." *Jones* at ¶ 105; *Goshade*, 1st Dist. Hamilton No. C-120586, 2013-Ohio-4457, at ¶ 15. The focus must be on the parties at the time of the interrogation and not based on hindsight. *Jones* at ¶ 150; *Goshade* at ¶ 15. Whether an emergency existed is "a highly context-dependent inquiry." *Jones* at ¶ 151.

**{¶57}** Through most of the approximately ten minute video captured by Officer Price's body worn camera, Monroe was shaking and crying and clutching her chest. The scene was chaotic. Another police officer seemingly told several loud bystanders to get back. Another bystander attempted to comfort Monroe. Paramedics had arrived and were tending to Turner's injuries. CPR was being performed on Turner, who appears to be in extremis a few feet from Monroe. Emergency personnel are seen walking past Monroe carrying a gurney. These circumstances did not, as the majority states, indicate that "there was no longer an ongoing emergency."

**{¶58}** In response to Officer Price's questions, Monroe identified Wilcox as the shooter, stated his age, and described his clothing and the car he was driving. After six minutes, Officer Price indicates that they have the suspect "maybe." He asked Monroe for her name and address and other personal information. Next, he asked her what "the other guy" was so mad about. Then Monroe began to talk about her former relationship with Wilcox. She was speaking quickly, and the information seemed to just spill out. At that time, she again began audibly sobbing. A female officer approached Monroe, asked her if she was alright and tried to comfort her. She

asked Monroe if she had any "kids," and Monroe stated that she was pregnant. The female officer told her that she needed to try and calm down. Subsequently, Monroe and the female officer walked out of the camera range. Officer Price then asked, "Didn't they say they had him in custody, or is that someone else?" A voice on the radio confirmed that they did.

**{¶59}** Officer Price's interview of Monroe was not the sort of "evil" the Confrontation Clause was designed to prevent. The situation was fluid, and the police were responding to an ongoing emergency. The questioning was not a structured police interview. It was informal, and occurred just minutes after the shooting, as opposed to hours. *See State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 12 (1st Dist.) (startling event occurred hours before police questioning). Contrary to the majority's assertion, Officer Price was not sure that the suspect had been apprehended. His questions were not leading, and he sought to discover what had happened and why, so as to appropriately respond to an ongoing emergency, not to gather facts for a later prosecution. Under the totality of the circumstances, Monroe's statements in the body-camera video were nontestimonial. The majority's interpretation of testimonial would render testimonial anything said to a police officer involved in investigating a crime and render Evid. R. 803(2) meaningless when police officers are involved. *See Nix*, 1st Dist. Hamilton No. C-030696, 2004-Ohio-5502, at ¶ 77.

**{¶60}** Wilcox did not specifically argue below or in his brief that Monroe's statements were testimonial. He contends that they lacked adequate indicia of reliability. In *Crawford*, the Supreme Court overruled in part its previous decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which had permitted the admission of hearsay statements made by unavailable witnesses against

criminal defendants if the statements bore "adequate indicia of reliability." *Crawford*, 541 U.S. at 40, 124 S.Ct. 1354, 158 L.Ed.2d 177; *Lewis*, 1st Dist. Hamilton Nos. C-050989 and C-060010, 2007-Ohio-1485, at ¶ 29. Shortly after *Crawford* was decided, this court stated, "*Crawford* does not appear to affect the continuing viability of *Roberts* with respect to nontestimonial hearsay." *Nix* at ¶ 73, fn. 9.

{¶61} Under *Roberts*, an out-of-court statement had adequate indicia of reliability if it either fell "within a firmly rooted hearsay exception" or "exhibited particular guarantees of trustworthiness." *Roberts* at 66. The excited-utterance exception has been found to be a firmly rooted hearsay exception. *See White v. Illinois*, 502 U.S. 346, 355, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), fn. 8; *State v. Jordan*, 8th Dist. Cuyahoga No. 70783, 1997 Ohio App. LEXIS 5107, 15-18 (Nov. 13, 1997); *State v. Stapleton*, 2d Dist. Montgomery No. 13579, 1993 Ohio App. LEXIS 2680, 9-10 (June 22, 1994); *State v. Barton*, 71 Ohio App.3d 455, 466-467, 594 N.E.2d 702 (1st Dist.1991).

{¶62} Monroe's statements in the body-camera video clearly fell within the hearsay exception for excited utterances. Her demeanor depicted in the video demonstrates that she was still under the influence of the startling event, having observed her boyfriend being shot minutes earlier. *See State v. Hamm*, 1st Dist. Hamilton Nos. C-16230 and C-16231, 2017-Ohio-5595, ¶ 33; *Goshade*, 1st Dist. Hamilton No. C-120586, 2013-Ohio-4457, at ¶ 9. The fact that she was responding to Officer Price's questions did not prelude the admission of her statements as excited utterances. The admission of statements as excited utterances is not precluded by questioning that (1) is not coercive or leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not

destroy "the domination of the nervous excitement over the declarant's reflective facilities." *Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 28, quoting *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 95. Officer Price's questioning met these requirements.

{¶63} Even if the admission of Monroe's statements was error, a constitutional violation can be harmless error if it did not, beyond a reasonable doubt, contribute to the conviction. *State v. Matthews*, 1st Dist. Hamilton Nos. C-060669 and C-060092, 2007-Ohio-4881, ¶ 13; *Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, at ¶ 16. The majority asserts that the state's case was "weaker without the offending statements." I disagree.

{¶64} Shortly after the gunshot was heard, Wilcox's car appeared on a video surveillance camera speeding away from the scene. He threw away the gun before Officer McGrath saw him "flying through the intersection against the red light." After he stopped Wilcox's car, Wilcox was "sweaty" and "nervous." He claimed that he had been in northern Kentucky, not near the library, and that his brakes had failed. When Detective Sieving interviewed him, he again lied to the police about his whereabouts. It was only after he had been indicted that he claimed the shooting was in self-defense.

{¶65} At trial, Wilcox testified that he believed that when Turner leaned back and put his hand on the left side where Turner's gun holster was located Turner was going to pull the gun out of his holster, so Wilcox grabbed his own gun and shot Turner. This claim was contradicted by the video showing that when paramedics rolled Turner over, his gun holster was tucked in his pants in the middle of his back.

{¶66} The majority's contention that Monroe's statements affected the jury is purely speculative. Under the circumstances, I would hold that the admission of

Monroe's statements in the body camera video did not contribute to Wilcox's conviction, and therefore, any error was harmless.

**{¶67}** In sum, I would hold that Monroe's statements to Officer Price in the officer's body-camera video were nontestimonial and were properly admitted into evidence as excited utterances. Accordingly, I would overrule Wilcox's first assignment of error. I would also overrule his remaining assignments of error and affirm his convictions.

Please note:

The court has recorded its entry on the date of the release of this opinion.